UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DATABASEUSA.COM LLC,<br>a Nevada Limited Liability Company<br>with its principal place of business<br>in the State of Nebraska,<br><br>    Plaintiff,<br><br>v.<br><br>THE SPAMHAUS PROJECT, a<br>company limited by guarantee and<br>organized under the laws of England,<br>aka THE SPAMHAUS PROJECT LTD,<br><br>    Defendant. | CASE NO.:<br><br>COMPLAINT and demand<br>for JURY TRIAL<br><br>Trial in Omaha, Nebraska |

COMES NOW Plaintiff Databaseusa.com LLC, and for its cause of action against The Spamhaus Project states and alleges as follows:

**JURISDICTION AND VENUE**

1. Plaintiff invokes this Court's jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and there is diversity of citizenship between the parties.

2. Jurisdiction is proper because a substantial part of the events or actions giving rise to the claims in this Complaint occurred in the State of Nebraska. Spamhaus is engaged in continuous activity which has a direct and substantial impact on business and transactions occurring in the State of Nebraska. Spamhaus has also specifically directed communications to the Plaintiff, a company registered, doing business, and with its principle place of business in Omaha, Nebraska.

**PARTIES**

1

3. Plaintiff Databaseusa.com LLC ("Database") is a Nevada Limited Liability Company registered to do business in the State of Nebraska with its principal place of business in Douglas County, Nebraska.

4. Defendant, Spamhaus, is a United Kingdom non-profit limited liability company (PRE/LBG/NSC/S.30). UK Company No. 05303831 with locations in both London, England at 26 York Street London W1U 6PZ United Kingdom and Geneva, Switzerland at 18 Avenue Louis Casai CH-1209 Geneva, Switzerland. Spamhaus does business in Nebraska by, among other things, marketing its services to companies, and specifically Internet Service Providers ("ISP"), located in Nebraska.

## FACTS AND BACKGROUND

5. Database is a business engaged in gathering and providing various information and databases for the purposes of marketing and analytics. Database gathers its information to assist companies with marketing, including email marketing.

6. A primary function of Database's business is predicated on its ability to gather and disseminate information through email.

7. Database is hired by companies that are seeking to improve their marketing via Database's cultivated information databases.

8. Database often works with large companies seeking to improve their own marketing using information purchased from Database to well known companies.

9. Database's website makes clear to prospective clients, that the clients are responsible for using the information received from Database "strictly for lawful purposes and in compliance with all applicable and federal laws within the United States, and in compliance with any and all jurisdictional laws, if used outside the United States."

10. Database also provides links and resources for complying with these legal requirements to its customers and clients.

11. Further, Database's contracts specify that its clients must "use the Products/Services in comkplaince with all applicable federal, state and local laws, rules and regulations."

12. Customers of Database agree that they "will comply with all Federal, State, and local statutes, regulations, and rules applicable to individual reference information in effect" when they purchase Database's services.

13. The information gathered by Database is "triple verified" for accuracy to assist its clients with their marketing abilities.

14. Spamhaus maintains various "blocklists" which block or prevent emails from being received by Spamhaus users, mainly ISPs.

15. Outside of Spamhaus' blocklist, Database has not been removed from any ISP for violating any authorized use policy.

16. One of the automated lists that Spamhaus generates is the Domain Block List ("DBL"). According to the Spamhaus website, "[m]ost DBL listings occur automatically, although where necessary Spamhaus researchers will add or remove listings manually." *See* https://www.spamhaus.org/dbl/

17. Spamhaus claims that, "[t]he DBL includes domains which are used in unsolicited bulk email including phishing, fraud, "419," or sending or hosting malware or viruses, as well as other domains with poor reputation due to many heuristics." *See* https://www.spamhaus.org/dbl/

18. In about May of 2017, Database discovered that it was added to one of Spamhaus' blocklists. Database was briefly removed in November of 2017, but was soon returned to the blocklist where it has remained since.

19. Despite its representations that the DBL only contains the domain names of entities that send emails including phishing, fraud, "419," malware, or viruses, Spamhaus nevertheless listed Database on the DBL, in spite of the fact that Database has never partaken in any of the prohibited actions that result in placement on the DBL.

20. Database has brought Spamhaus's error to its attention multiple times. Database has made numerous attempts to have its name removed from the DBL by communicating the problem directly to Spamhaus and following the prescribed channels of removal. Instead of acknowledging its erroneous inclusion of Database on the DBL and removing them from the register, Spamhaus has continued to wrongfully keep Database on the DBL.

21. Database has routinely followed the procedures at Spamhaus' "Blocklist Removal Center" in an effort to get off of Spamhaus' blocklist.

22. On June 20, 2019, a representative from Spamhaus responded to one of Database's removal attempts stating:

> We have reviewed the DBL listing for databaseusa[.]com and decided that we will retain that listing at this time. We do not discuss criteria for inclusion in DBL, however it includes many factors. Your domain matches several of those criteria.
>
> DBL listings expire over time, so if our systems do not see your domain for a while it will drop out of DBL zone. Many factors which affect your domain's reputation may also change over time, so by engaging in good reputation practices it will eventually drop out of DBL. For more information, please see DBL FAQ "Why is my domain listed in DBL?"
> http://www.spamhaus.org/faq/section/Spamhaus%20DBL#371

4

23. Despite all efforts to get relief from Spamhaus' blocklist, Database remains listed on the DBL blocklist.

24. To date, Spamhaus has refused to provide any reason or justification for placing Database on the blocklist.

25. As a direct and proximate result of Spamhaus placing Database on the blocklist, Database has been severely damaged through its inability to work with and communicate with its own customers.

26. Spamhaus has severely damaged Database through lost customers, lost business, lost opportunities, and lost revenue.

27. Database has lost a number of clients and/or opportunities as a result of Spamhaus' block list, the inability to send emails, and the messages being displayed on social media sites as a direct result of being included on Spamhaus's DBL. Database's reputation in the business community has suffered significantly and continues to suffer, all as a consequence of Spamhaus's wrongful acts.

28. To date, and despite repeated requests to remove Database from the DBL, Spamhaus refuses to do so without reason. Spamhaus's refusal has caused substantial harm to Database, so much so that Database faces irreparable harm to its economic interests and reputation such that only the equitable relief sought below will be adequate under the continuing circumstances of this case.

## COUNT I
### (Injunctive Relief)

29. The foregoing paragraphs are hereby incorporated by reference.

30. Spamhaus has wrongfully placed Database on the DBL blocklist without providing any basis or justification. Database has informed Spamhaus of the error, yet Spamhaus has refused to take any action to remove Database from the blocklist. As a result of Spamhaus' action and inaction, Database continues to suffer irreparable harm.

31. While Database has been damaged monetarily as a result of the continued presence on the blocklist, the remedy at law is inadequate for continued placement on the blocklist. Database continues to suffer unknown harms as a direct and proximate result of Spamhaus' wrongful acts.

32. Database has a probability of success on the merits.

33. Without intervention from the Court, Database will continue to sustain irreparable harm.

34. Without this Court's intervention, Database will continue to sustain irreparable harm directly cause by Spamhaus's wrongful acts.

## COUNT II
**(Tortious Interference With Business Relationship and/or Expectancy)**

35. The foregoing paragraphs are hereby incorporated by reference.

36. Database had valid business relationships and expected prospective business relationships.

37. Spamhaus has been aware of the repeated requests by Database to remove Database from the blocklist.

38. Spamhaus has actual and/or constructive knowledge of the harmful and intrusive result on a company's business relations by placing it on the blocklist. Spamhaus has had numerous opportunities to remedy the error of placing Database on the blocklist.

39. Spamhaus has intentionally left Database on the harmful and intrusive blocklist without justification, continuing to knowingly interfere with Database's business.

40. Database has sustained substantial harm as a direct and proximate result of Spamhaus' actions.

41. Database has lost current and prospective clients and business relationships as a direct and proximate result of Spamhaus' actions.

42. Database has been damaged by Spamhaus' conduct in an amount to be proven at trial but in no case less than $1,000,000.

## COUNT III
### (Defamation Per Se)

43. The foregoing paragraphs are incorporated by reference.

44. By including Spamhaus on the blocklist, Spamhaus is routinely publishing false and defamatory statements about Database to third parties.

45. These publications are intentional, or at a minimum negligent, on behalf of Spamhaus.

46. The false statements by Spamhaus are slanderous per se as they prejudice Database on their profession and/or trade.

47. Words that prejudice a party, or impute lack of ability, in his or her trade, profession, or business are considered actionable per se and give rise to a cause of action for defamation without a showing of special damages.

48. A statement that falls within the actionable per se category is considered so obviously and materially harmful that injury to reputation may be presumed.

49. Spamhaus explains on its website, https://www.spamhaus.org/dbl/, that "[t]he DBL zone is publicly queriable with real-time responses." Spamhaus goes on to describe exactly what the DBL is and how domains are chosen to be on the list. "The Spamhaus DBL is a list of domain names with **poor reputations**." (emphasis added). "The DBL includes domains which are used in unsolicited bulk email including phishing, fraud, '419,' or sending or hosting malware or viruses, as well as other domains with poor reputations due to many heurisitcs."

50. By erroneously including Database on the DBL, Spamhaus is indicating to the public at large, through its words and actions, that it believes Database has a poor reputation and partakes in unsolicited bulk email, which is untruthful and extraordinarily damaging to Database's good reputation.

51. Database is not now, nor was it ever, a spammer or hacker, like the Spamhaus website implies.

52. Spamhaus' false and unprivileged statements, made with the malicious intent to injure Database and its future business prospects, have not only injured the reputation of Database, but have caused clients to question the ability of Database to perform the services that the clients have retained them to perform within compliance of various Acceptable Use Standards, Terms of Service Agreements, ISPs' policies and procedures, as well as the state and federal laws governing the distribution of commercial mail. These statements are actionable per se.

53. The statements made by Spamhaus have not only substantially prejudiced Database's reputation, but have also caused Database to lose business.

54. Spamhaus' defamatory statements have caused Database to suffer damages to their reputation in an amount in excess of $ 1,000,000.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order in Plaintiff's favor granting the following relief:

a) Require Spamhaus to immediately and permanently remove any reference to Database from any and all lists or registers it is included on;

b) Require Spamhaus to immediately post on Spamhaus's website, on both the Home page and the DBL jump page for a period of six (6) months, a notice to inform persons that Database was erroneously included on the DBL, that Database is not, and has never been a spammer, and that Database is not engaged, and has not previously engaged, in any activity that would warrant its inclusion on the DBL;

c) Require Spamhaus to refrain from placing Database on the DBL in the future unless and until Spamhaus can establish the propriety of doing so to the Court's satisfaction, and obtain an order from this Court permitting Spamhaus to place Database on the DBL;

d) Retain jurisdiction over this matter to enforce Spamhaus's compliance with the provisions listed above;

e) Monetary damages in an amount to be proven at trial but in no case less than $1,000,000;

f) Any such other and further relief as this court deems equitable and just.

                    DATABASEUSA.COM LLC,
                    Plaintiff

BY:   /s/ Robert S. Sherrets
        Robert S. Sherrets, NE #24791
        Sherrets Bruno & Vogt LLC
        260 Regency Parkway Drive, Suite 200
        Omaha, NE 68114
        phone: (402) 390-1112
        fax: (402) 390-1163
        law@sherrets.com
        ATTORNEYS FOR THE PLAINTIFF