IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DATABASEUSA.COM LLC, a Nevada Limited Liability Company with its principal place of business in the State of Nebraska;<br><br>Plaintiff,<br><br>vs.<br><br>THE SPAMHAUS PROJECT, a company limited by guarantee and organized under the laws of England also known as The Spamhaus Project LTD<br><br>Defendant. | 8:19CV423<br><br>MEMORANDUM and ORDER |

This matter is before the Court after evidentiary hearings on plaintiff DatabaseUSA.com's ("Database") motion for a default judgment, Filing No. 13.

A clerk's entry of default was entered in this matter. Filing No. 11. The Court thereafter entered a default judgment in favor of Database on liability. Filing No. 16. Hearings on the plaintiff's damages were scheduled twice. The Court mailed the defendant its order setting the final default hearing on damages. Filing No. 16. The defendant did not appear for either hearing.

Under the Federal Rules of Civil Procedure, the entry of a default judgment against a party is committed to the "sound discretion of the trial court." *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015). It is "appropriate for a district court to enter a default judgment when a party fails to appropriately respond in a timely manner." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). "Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as

1

true. *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). It is, however, "incumbent upon the district court to ensure that 'the unchallenged facts constitute a legitimate cause of action' prior to entering final judgment." *Marshall*, 616 F.3d at 852-53 (quoting *Murray*, 595 F.3d at 871). Moreover, "'a default judgment cannot be entered until the amount of damages has been ascertained.'" *Hagen v. Sisseton–Wahpeton Community College*, 205 F.3d 1040, 1042 (8th Cir. 2000).

I.  JURISDICTION

The Court must first determine whether it has jurisdiction.[1] In an earlier order, the court found it had general jurisdiction over the defendant because the corporation's activities in knowingly selling internet services to providers who do business in Nebraska were constant and pervasive 'as to render [it] essentially at home in the forum State.'" Filing No. 16, Order at 3. Because the plaintiff's claims are intentional torts, the Court should evaluate specific jurisdiction using the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783, 787-89 (1984). *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020). In *Calder*, personal jurisdiction was established where the nonresident defendant committed a tort and the associated harm was felt primarily within the forum state. *Id.*

The record shows that Database is a business engaged in gathering and providing various information and databases for the purposes of marketing and analytics. It is a Nevada limited liability company with its principle place of business in Douglas County,

---

[1] At the first hearing on March 12, 2020, an issue arose on whether the plaintiff had properly served the defendant under Federal Rule of Civil Procedure 4. The plaintiff was granted leave to submit a brief on the issue. *See* Filing No. 28, Brief. The plaintiff has shown that it has complied with the Hague Convention and personally served a representative authorized to accept service of process in London. *Id.* To the extent that the Court has an affirmative obligation to make a finding that the defendant was served consistent with the Hague Convention before entering default judgment, the Court is satisfied that defendant Spamhaus was properly served. *See 360 Insight, LLC v. Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007) ("*Spamhaus I*").

Nebraska. Database gathers information to assist companies with marketing, including email marketing. The plaintiff alleges that the defendant Spamhaus is a non-profit limited liability company based in the United Kingdom. Spamhaus holds out to the public that its Domain Block List (DBL) "includes domains which are used in unsolicited bulk email including phishing, fraud, '419,' or sending or hosting malware or viruses, as well as other domains with poor reputation due to many heuristics." Spamhaus does not list the heuristics and does not detail the methodology for deciding which companies or individuals are placed on the DBL. Database alleges it does not participate in "unsolicited bulk email including phishing, fraud, '419,' or sending or hosting malware or viruses."

Spamhaus maintains various "blocklists" which it provides to various Internet Service Providers (ISPs). ISPs include companies that sell internet access to consumers, such as cable internet providers. The defendant placed the plaintiff on a DBL. The DBL is used by various companies to prevent their users from receiving emails or communications from companies placed on the DBL. Database claims damages as a result of this conduct.

Defendant Spamhaus is not new to the Federal Court. In 2006, a default judgment was entered against Spamhaus in a similar case in the Northern District of Illinois. *See* e360 *Insight, LLC v. Spamhaus Project,* No. 06 C 3958, 2009 WL 3272874, \*1 (N.D. Ill. Oct. 8, 2009); *e360 Insight, LLC v. Spamhaus Project,* No. 06 C 3958, 2010 WL 2403045, \*1 (N.D. Ill. June 11, 2010). Both the district court and the Court of Appeals for the Seventh Circuit found personal jurisdiction over the defendant. e360 *Insight, LLC v. Spamhaus Project*, 500 F.3d 594, 598-600 (7th Cir. 2007) ("*Spamhaus I*"); *see also* e360 *Insight, LLC v. Spamhaus Project*, 658 F.3d 637 (7th Cir. 2007) ("*Spamhaus II*"). Due to

3

its failure to appear, the defendant does not assert this Court is without jurisdiction. Furthermore, the aforementioned courts found personal jurisdiction for similar conduct. Accordingly, the Court finds it has jurisdiction over the defendant.

II.   CLAIMS

The record, including the testimony of Database CEO Fred Vakili, shows that Database discovered in May of 2017 that Spamhaus had added Database to one of its blocklists. Database was removed from the list in November of 2017 but was added back to the blocklist, where it has remained. Database contacted Spamhaus repeatedly regarding its inclusion on the blocklist. Database followed the procedure Spamhaus required to be removed from blocklists. On June 20, 2019, Spamhaus declined to remove Database from its blocklists, stating that "[w]e do not discuss criteria for inclusion in DBL, however it includes many factors. Your domain matches several of those criteria." Filing No. 14-1, Affidavit of Fred Vakili ("Vakili Aff.") at 3.

In its Complaint the plaintiff raises two claims (denominated as "Counts") under Nebraska law:  1) tortious interference and 2) defamation *per se*.[2]   The necessary elements of tortious interference with a business relationship or expectation are (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Matheson v. Stork*, 477 N.W.2d 156, 160 (Neb. 1991). One of the basic elements of tortious interference with a business relationship requires an intentional act which induces or causes a breach

---

[2] Database also denominated "injunction" as a "Count," but that is properly a remedy.

4

or termination of the relationship. *See id.* An intentional, but justified, act of interference will not subject the interferer to liability. *The Lamar Co., LLC v. City of Fremont*, 771 N.W.2d 894, 905–06 (Neb. 2009).

The plaintiff alleges that Database had valid business relationships and expected prospective business relationships, Spamhaus had actual or constructive knowledge of the harmful effects of the domain block list on a company's business relations, Spamhaus intentionally left Database on the domain block list without justification, and Database has sustained substantial harm as a direct and proximate result of Spamhaus' actions in that lost current and prospective clients and business relationships. Those allegations satisfy the standard for entering default judgment on the tortious interference claim.

Under Nebraska law, "[d]efamation is of two types." *Hatcher v. McShane*, 670 N.W.2d 638, 644 (Neb. Ct. App. 2003). There are statements that are actionable per se, that is, in themselves, or words may be actionable *per quod*, that is, only on allegation and proof of the defamatory meaning of the words used and of special damages. *K Corp. v. Stewart*, 526 N.W.2d 429, 434 (Neb. 1995). By definition, statements constituting slander *per se* are unambiguous in their defamatory meaning and do not require proof of extraneous facts. *Hennis v. O'Connor*, 388 N.W.2d 470, 476 (Neb. 1986). Spoken or written words are slanderous or libelous *per se* only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one. *Matheson v. Stork*, 477 N.W.2d 156, 160-61 (Neb. 1991). If a statement imputes to a business an unfitness to operate, otherwise prejudices its business operation, or falsely states that a private corporation is in a precarious financial

5

position, is unable to meet its obligations, and is nearing the end of its existence, that statement is libel *per se*. *K Corp.*, 526 N.W.2d at 434. In a suit for slander *per se*, no proof of any actual harm to reputation or any other damage is required for the recovery of either nominal or substantial damages. *McCune v. Neitzel*, 457 N.W.2d 803, 810 (Neb. 1990).

Thus, a claim of defamation requires (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Norris v. Hathaway*, 561 N.W.2d 583, 585 (Neb. Ct. App. 1997). In an action for defamation, the damages that can be recovered are (1) general damages for harm to reputation; (2) special damages; (3) damages for mental suffering; and (4) if none of these are proven, nominal damages. See *Hall v. Vakiner*, 248 N.W. 70, 71 (Neb. 1933) harm to reputation and mental suffering); *Hruby v. Kalina*, 424 N.W.2d 130,132 (Neb. 1988) (explaining that words which are not slanderous *per se* do not constitute a basis for recovery of damages in the absence of a specific allegation of special damages); *Hutchens v. Kuker,* 96 N.W.2d 228, 231 (Neb. 1959)(nominal damages).

Database alleges defamation *per se*. Filing No. 1, Complaint. Because its allegations relate to harm to a profession or trade, Database states a claim for defamation *per se*. A claim for defamation *per se* requires at least negligent conduct, but even if Database were regarded as a limited purpose public figure by virtue of advertising and solicitation, Database has satisfied the "actual malice" standard because it has alleged Spamhaus's actions were intentional. Whether the actual malice standard would apply

comes in as an affirmative defense. There is no obligation on the district court to raise *sua sponte* affirmative defenses. *Spamhaus I*, 500 F.3d at 599 (noting however that a party may generally challenge a default judgment for lack of personal jurisdiction at any time).

Database's allegations satisfy the standards for entry of default judgment on the defamation claim. As noted above, the Court previously entered a default judgment for the plaintiff's stated claims of tortious interference with contractual business relationships and for defamation. Filing No. 16.

III. DAMAGES

A. Money Damages.

Database presented evidence of damages for three years of lost revenue equaling approximately six million dollars. *See* Filing No. 14-1, Vakili Aff at 5-8. Based on this lost revenue, Database CEO Fred Vakili opined that the business lost value. He conservatively calculates a business' value as three times annual revenue. He testified that the defendant's tortious conduct caused Database to sustain a total lost value of eighteen million dollars. *Id.*

Under Nebraska law, the trier of fact may award only those damages that are the probable, direct, and proximate consequences of the wrong complained of. *Bedore v. Ranch Oil Co.*, 805 N.W.2d 68, 87 (Neb. 2011). A plaintiff's burden to prove the nature and amount of its damages cannot be satisfied on speculative and conjectural evidence. *Id.* However, "proof of damages to a mathematical certainty is not required; the proof is sufficient if the evidence is such as to allow the trier of fact to estimate actual damages with a reasonable degree of certainty and exactness." *ACI Worldwide Corp. v. Baldwin*

7

*Hackett & Meeks, Inc.*, 896 N.W.2d 156, 193 (Neb. 2017). Also, a claim for lost profits must be supported by some financial data which permit an estimate of the actual loss to be made with reasonable certitude and exactness. *Bedore*, 805 N.W.2d at 88.

The Seventh Circuit cases involving Spamhaus are also instructive. *Spamhaus I*, 500 F.3d at 602-03 (vacating $11 million dollar award based only on a conclusory affidavit and remanding for a more extensive inquiry and a hearing); *Spamhaus II*, 658 F.3d at 647–48 (finding failure to offer any evidence that would have allowed the district court to determine what portion of $27,000 lost gross revenue would have been profit doomed the damages award). Gross revenue is generally not an appropriate measure of damages because revenue is calculated without regard to the costs the plaintiff incurred in the course of making that revenue. *Spamhaus II*, 658 F.3d at 647.

The Court will not award the plaintiff damages for either lost revenue or its so-called devaluation. As noted above, the measure of damages under Nebraska law does not allow recovery of lost revenue. The appropriate remedy is lost profits. As to the diminished value of the business, there is no evidence Database was purchased or is in the process of being purchased. In any event such damages would be on behalf of the stockholders not the corporation.

The Court will hold the record open for 30 days to allow the plaintiff to provide a calculation of its lost profits damages caused by the defendant's tortious conduct.

B.  Injunction

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff

must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court. *Id.* In *Spamhaus I*, the Seventh Circuit found that "although a default judgment establishes liability, it does not answer whether any particular remedy is appropriate," especially in the case of equitable relief. *Spamhaus I*, 500 F.3d at 604 (reversing the trial court's entry of a permanent injunction based only on the plaintiff's success by default and the failure of Spamhaus to interpose objections). The Seventh Circuit found a "more substantial inquiry" by the district court was necessary prior to the entry of equitable relief since the party seeking it had to demonstrate the inadequacy of legal relief. *Id.*

The Seventh Circuit also found that the district court's injunction in *Spamhaus I* was not tailored to the scope of the violation. *Id.* at 605. The court stated:

> [T]the facts upon which the judgment is supported demonstrate only that at the time that Spamhaus initially posted that e360 was a "spammer"—the posting upon which the cause of action was based—the posting was false. That the label was false when originally posted does not mean that, applying Spamhaus' generally applicable criteria for determining what a spammer is, e360 ought to be given a free pass for all time. Rather, it simply means that, whatever the initial factual basis Spamhaus had used to list e360 on the [registry of known spammers], Spamhaus may not rely on that basis in the future. If Spamhaus were to discover additional evidence that e360 meets the [registry's] criteria and subsequently were to place e360 on the [registry] on the basis of that new evidence, Spamhaus would be entitled to a separate judicial determination that this new label is in fact false and that it is liable for defamation.

*Id.* at 605. Accordingly, the Court found that "[a]n injunction that bars Spamhaus from referring to e360 as a spammer *prospectively*, without taking account of the actual

9

grounds for liability in this action, is not tailored to the scope of the violation." *Id.* (emphasis added). It also found the injunction's requirement that Spamhaus post notice to the effect that the plaintiff is not a spammer could not be sustained for the same reason—-whether the plaintiff was a spammer at the time of the injunction was not a fact that had been determined by the default judgment. *Id.* (stating "[t]he fact determined by the judgment is that e360 was not a spammer when Spamhaus so identified it on the date of the action giving rise to the complaint.").[3]

An injunction in this case would similarly be limited to the status of the listing at the time of the judgment. The plaintiff alleged that "[d]espite its representations that the [domain block list] only contains the domain names of entities that send emails including phishing, fraud, '419,' malware, or viruses, Spamhaus nevertheless listed Database on the [domain block list], in spite of the fact that Database has never partaken in any of the prohibited actions that result in placement on the DBL." '; Complaint. It thus appears that prospective relief would not be tailored to the liability at issue.

Database seeks an injunction that: a) requires Spamhaus to immediately and permanently remove any reference to Database from any and all lists or registers it is included in; b) requires Spamhaus to immediately post a notice on Spamhaus's website to inform persons that Database was erroneously included on the Domain Block List, that Database is not, and has never been a spammer, and that Database is not engaged and has not previously engaged, in any activity that would warrant its inclusion on the domain block list; c) requires Spamhaus to refrain from placing Database on the domain block list

---

[3] Equitable relief was not addressed in *Spamhaus II*. No injunctive relief was awarded by the district court on remand from *Spamhaus I*. See *e360 Insight, LLC v. Spamhaus*, No. 06 C 3958, 2010 WL 2403054, at *8.

in the future unless and until Spamhaus can establish the propriety of doing so to the Court's satisfaction, and obtain an order from this Court permitting Spamhaus to place Database on the Domain Block List; and d) retains jurisdiction over this matter to enforce Spamhaus's compliance with the provisions listed above. Filing No. 1, Complaint. This prayer for injunctive relief suffers the same infirmities as those found in *Spamhaus I* in that the focus of the default is past inclusion on the list.

Given that the factual allegations of the Complaint are deemed to have been admitted by the nonresponding party, the past inclusion of Database on the domain block list was wrongful. That is not to say that prospectively Spamhaus could not include Database on the list, depending on Spamhaus's standards and database's conduct. As for the requirement that Spamhaus prove "to the Court's satisfaction" that Database belongs on the list, the Court has no standards by which to gauge compliance with either the law or the standards set by Spamhaus and/or other organization.

In considering the factors under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. at 391, the Court finds that the plaintiff has not suffered an irreparable injury and that the remedies available at law, to wit monetary damages, are inadequate to compensate for the alleged injury. Since this is a default judgment, the Court has heard only from the plaintiff. Accordingly, the Court cannot balance the hardships between the plaintiff and defendant that would warrant a remedy in equity. Also, the Court cannot determine whether the public interest would not be disserved by a permanent injunction.

In *Spamhaus I*, the Seventh Circuit noted that "sensitive First Amendment issues [are] presented in the context of permanent injunctions in defamation cases," since "permanent injunctions—i.e., court orders that actually forbid speech activities—are

classic examples of prior restraints." *Spamhaus I*, 500 F.3d at 605-06. However, the Court did not address the issue, expressing "no opinion on the Constitutional validity of any new, narrowed injunctive relief the court might think appropriate after considering the relevant factors." *Id.* at 606. The plaintiff's requested equitable relief in this case is at least as broad as that imposed in *Spamhaus I*. This Court has not been presented with a narrowly-drawn injunction that could pass constitutional muster.

IT IS THEREFORE ORDERED:

1. The plaintiff's motion for default judgment (Filing No. 13) is taken under advisement as to damages at law.

2. The record will remain open for 30 days to allow the plaintiff to provide an affidavit providing a calculation of its lost profits due to the defendant's alleged tortious conduct.

3. The plaintiff's motion for injunctive relief is denied.

Dated this 5th day of May, 2020.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge