# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DATABASEUSA.COM LLC, )<br>a Nevada Limited Liability Company )<br>with its principal place of business )<br>in the State of Nebraska, )<br>   )<br>   Plaintiff, )<br>   )<br>v. )<br>   )<br>THE SPAMHAUS PROJECT, a )<br>company limited by guarantee and )<br>organized under the laws of England, )<br>aka THE SPAMHAUS PROJECT LTD, )<br>   )<br>   Defendant. ) | CASE NO.:   8:19-cv-423<br><br><br><br><br><br><br>**PLAINTIFF'S RESPONSE TO<br>MEMORANDUM AND ORDER** |

COMES NOW Plaintiff Databaseusa.com LLC ("Database") and submits the following Response to this Court's May 5, 2020 Memorandum and Order (the "Order"). [Doc. 29.]

## INTRODUCTION

This Court's Order found Defendant The Spamhaus Project ("Spamhaus") liable in this case, but ordered Database to provide additional evidence as to damages. The Order also denied Database's request for an injunction, finding that the injunction requested was too broad to meet constitutional muster.

The Court stated that Database needed to provide a calculation of lost profits for damages caused by Spamhaus' tortious conduct. [Doc. 29 at 8.] At this juncture, when analyzing the damage caused by Spamhaus directly, it would be incredibly difficult to calculate the specific monetary damages caused *by Spamhaus*, as well as calculating the specific harm caused to Database's good will and reputation through the inclusion of Database on the blocklist by Spamhaus. As such,

1

Database respectfully requests that the Court reconsider entering a narrow or limited injunction discussed herein to protect Database's rights.

## ARGUMENT

## I. MONETARY DAMAGES ARE INADEQUATE TO COMPENSATE THE INJURIES CAUSED TO DATABASE FOR BEING INCLUDED ON THE BLOCKLIST.

This Court has recognized that "[a] company's loss of goodwill and reputation among its customers is often not quantifiable, and can therefore amount to irreparable harm." *NL Enterprises, LLC v. United Pac. Pet, LLC*, No. 4:15CV3163, 2016 WL 2688930, at 2 (D. Neb. May 9, 2016). In his affidavit and before this Court, Fred Vakili ("Vakili"), the CEO of Database, testified that the direct result of Spamhaus placing Database on the blocklist was the damage done to Database's ability to work with and communicate with its own customers. [Doc. 14 ¶ 20.] Vakili also noted that Spamhaus' actions had severely damaged Database through a loss of customers. [Doc. 14 ¶ 20.] Specifically, Vakili stated that the "blocklist provides a stigma that Database is doing something wrong or illegal, which is completely false" as well as causing damage to Database's name goodwill and reputation. [Doc. 14 ¶¶ 48, 50.] Vakili even notes that "it would be difficult to quantify the total losses to Database" if Database were not removed from the blocklist. [Doc. 14 ¶ 49.]

## II. THIS COURT CAN ENTER A LIMITED INJUNCTION.

This Court discussed the legality of an injunction in this case in the Order, noting that it had not yet "been presented with a narrowly-drawn injunction that could pass constitutional muster." [Doc. 29 at 12.] Due to the inadequacy of monetary damages to address the injury in

2

this case, Database now submits additional argument and an injunction drawn narrowly enough to pass constitutional muster.

### A. Nebraska law allows for an injunction against speech in furtherance of an additional tort.

This Court addressed the legality of an injunction at length in its Order. [Doc. 29 at 8-12.] Rightfully addressing the prior case along similar lines, *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 603 (7th Cir. 2007), this Court decided that Database had failed to present a "narrowly-drawn injunction that could pass constitutional muster." Traditionally, American courts have abided by the rule that "equity will not enjoin a libel" because "damages provide an adequate remedy at law…and to enjoin defamation is to effect an unconstitutional prior restraint on speech." *Sid Dillon Chevrolet-Oldsmobile-Pontiac, Inc. v. Sullivan*, 251 Neb. 722, 730–31, 559 N.W.2d 740, 746 (1997). However, Nebraska law contains a narrow exception to this rule, and recognizes that "equity may restrain libel or slander if essential to preserve a property right, if the publication is in violation of a trust or contract, **or if the defamation is published in aid of another tort or unlawful act."** *Id.*

This Court has previously entered a default judgment for Database's claim of tortious interference with contractual business relationships, finding that:

> The plaintiff alleges that Database had valid business relationships and expected prospective business relationships, **Spamhaus had actual or constructive knowledge of the harmful effects of the domain block list on a company's business relations**, Spamhaus intentionally left Database on the domain block list without justification, and Database has sustained substantial harm as a direct and proximate result of Spamhaus' actions in that lost current and prospective clients and business relationships.** Those allegations satisfy the standard for entering default judgment on the tortious interference claim.

[Doc. 29 at 5 (emphases added).]

3

In *Sid Dillon*, The Nebraska Supreme Court expressly found that a Court could issue an injunction regarding a false or misleading misrepresentation of fact if such libel or slander is published "in aid of another tort or unlawful act, or injunctive relief is essential for the preservation of a property right." *Sid Dillon Chevrolet-Oldsmobile-Pontiac, Inc. v. Sullivan*, 251 Neb. 722, 732, 559 N.W.2d 740, 747 (1997). The *Sid Dillon* court follows some modern jurisprudence that recognizes a limited role for equity in similar circumstances:

> Thus, injunctions may be granted where the false statements are part of a conspiracy to injure, or where there is intimidation or coercion, and will restrain publication of false and defamatory words where publication is the means or incident of such tortious conduct. **Injunctive relief in defamation cases may also be available in the context of removing or correcting past defamatory statements that were already published.**

42 Am. Jur. 2d Injunctions § 97 (emphasis added, citations omitted).

Indeed, a recent Delaware decision discussed the historical precedence of injunctions against speech in circumstances precisely such as these:

> Despite the broad rule against injunctive relief in defamation cases, courts in the twentieth century have carved out two exceptions. One is for business disputes.
>
> …
>
> During the twentieth century, American courts increasingly granted preliminary injunctions to address "trade libel," a concept that initially covered statements "disparaging the quality ... of property," then expanded "to encompass any injury to economic advantage arising from false derogatory statements." Courts divided on the availability of injunctive relief, with some judges issuing injunctions, others adhering to the traditional anti-injunction rule, and many adopting a middle ground in which a preliminary injunction would issue if the trade libel furthered another tort that independently warranted equitable relief.
>
> …
>
> Viewing the Complaint charitably, the Company might be seen as having attempted to plead a trade libel. Count III of the Complaint asserted a claim for tortious interference with prospective economic advantage. **Unlike defamation, injunctive relief is a common and non-controversial remedy for tortious interference with prospective economic advantage. Courts have recognized**

> **that a request for equitable remedies for tortious interference with prospective economic advantage can provide the requisite basis for equitable jurisdiction that can justify a related injunction against future speech.**

*Organovo Holdings, Inc. v. Dimitrov*, No. 10536-VCL, 2017 WL 2417917, at *14–16 (Del. Ch. June 5, 2017), judgment entered, (Del. Ch. 2017) (emphasis added).

Other Courts have recognized that the traditional bar against injunctive relief against speech has exceptions and is, in fact, changing. *See Balboa Island Vill. Inn, Inc. v. Lemen,* 40 Cal. 4th 1141, 1155, 156 P.3d 339, 348 (2007), *as modified* (Apr. 26, 2007); *Hill v. Petrotech Res. Corp.*, 325 S.W.3d 302 (Ky. 2010); *Advanced Training Sys., Inc. v. Caswell Equip. Co.*, 352 N.W.2d 1, 11 (Minn. 1984) (noting that "[c]learly, false or misleading "commercial speech" may be forbidden."). Indeed, the Nebraska Court of Appeal has applied and expanded on *Sid Dillon*, noting that injunctions can be used against speech in limited circumstances: "In order for the injunction to pass constitutional muster, the suppression must be limited to the precise statements already found libelous." *Nolan v. Campbell*, 13 Neb. App. 212, 227, 690 N.W.2d 638, 653 (2004).

Thus, this Court can enter a limited injunction against speech already found to be defamatory if that speech is being used "**in aid of another tort or unlawful act.**" *Sid Dillon Chevrolet-Oldsmobile-Pontiac, Inc. v. Sullivan*, 251 Neb. 722, 730–31, 559 N.W.2d 740, 746 (1997). That is exactly the situation before this Court. This Court has found that Spamhaus was intentionally and tortuously interfering with Database's business by placing Database on the blocklist and alleging that Database engaged in illicit business practices. [Doc. 29 at 5.] So long as the injunction is narrowly-tailored, this Court has the power to enter an injunction.

### B.   A Narrowly-Tailored Injunction Meets this Requirement.

As discussed above, this Court can enter a limited injunction aimed at Spamhaus' actions because they were done in furtherance of tortuously interfering with Database's business. Even

still, any such injunction must be narrow to avoid infringing on free speech concerns. Accordingly, Database believes this Court should enter a simple injunction requiring Spamhaus a statement on its website that: (1) Database was wrongfully included on the blocklist from May of 2017 until the date of this Court's order, (2) referencing this litigation by name and case number, and (3) remove Database from the list **or** provide an explanation for how Database can be removed from the blocklist. Specifically, Database proposes the following order:

IT IS ORDERED:

1. Plaintiff's Motion for Court's Entry of Default Judgment, ECF No. ____, is granted;

2. Plaintiff is entitled to a nominal judgment against Defendant in the amount of $_____;

3. Plaintiff is entitled to an injunction, requiring Defendant to:

    a. Publish a statement on the blocklist website that Databaseusa.com LLC was wrongfully included on the blocklist from May 2017 until the date of this order.

    b. Defendant will include in its published statement a reference to this action by name and case number.

    c. Defendant shall remove Database from the blocklist going forward, or, provide Database with an explanation for why Database is on the blocklist and an explanation for how Database can be removed from the blocklist.[1]

Such an injunction is limited to the allegation in the complaint in this matter that Database was wrongfully placed on the blocklist in May of 2017. A limited injunction in this vein also would not restrict Spamhaus' right to free speech or be a prior restraint on Spamhaus' future

---

[1] Database provides this proposed language merely as an aid to the Court and respectfully requests that the Court add or strike any part or parts of this proposed language it deems necessary.

speech. The net effect of this limited injunction would be to add context to Database's inclusion on the blocklist and direct interested parties to review this suit and its allegations.

This Court can and should enter an order that (1) Database was wrongfully included on the blocklist from May of 2017 until the date of this Court's order, (2) referencing this litigation by name and case number, and (3) remove Database from the list **or** provide an explanation for how Database can be removed from the blocklist.

### III.     DATABASE IS ENTITLED TO AN INJUNCTION.

"A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006). Specifically, a "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

#### A.     Database has suffered an irreparable injury.

The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies. *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) *quoting Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).  "Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) *see also United Healthcare Ins. Co. v. AdvancePCS,* 316 F.3d 737, 741 (8th Cir. 2002) ("[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury.").

As discussed above, Database has no adequate remedy at law. Irreparable injury can be shown "by showing that the movant has no adequate remedy at law." *W. Plains, L.L.C. v. Retzlaff Grain Co. Inc*., 927 F. Supp. 2d 776, 788 (D. Neb. 2013). Thus, Database has shown that it will suffer an irreparable injury.

### B.    The Remedies at Law are inadequate to Compensate for this Injury.

As discussed above, the remedies at law are inadequate in this case because they are impossible to actually calculate. This Court has recognized as much previously, noting that when a parties' acts "significantly change the relevant market, losses may frequently defy attempts at valuation." *Streck, Inc. v. Research & Diagnostic Sys., Inc*., No. 8:06CV458, 2010 WL 11530582, at *3 (D. Neb. Sept. 30, 2010), *aff'd*, 665 F.3d 1269 (Fed. Cir. 2012). The *Streck* Court even noted that "[p]ast harm to a patentee's market share, revenues, and brand recognition is relevant to the irreparability of harm determination." *Id*.

Thus, the remedies at law available to Database, which now requests merely nominal damages, are inadequate.

### C.    Considering the Balance of Hardships, a Remedy in Equity is warranted.

The "balance of hardships" assesses the relative effect of granting or denying an injunction on the parties. *Streck, Inc. v. Research & Diagnostic Sys., Inc*.**,** No. 8:06CV458, 2010 WL 11530582, at *3 (D. Neb. Sept. 30, 2010), *aff'd*, 665 F.3d 1269 (Fed. Cir. 2012). "To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. A Court also must consider the potential economic harm to each of the parties and to interested third parties." *W. Plains, L.L.C. v. Retzlaff Grain Co. Inc*., 927 F. Supp. 2d 776, 787 (D. Neb. 2013) *citing Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir.1994).

The balance of hardships in this case clearly favors Database. Under Database's proposed injunction, Spamhaus would be required simply to include an additional statement on its website about Database. Indeed, Spamhaus would be able to keep Database on the blocklist into the future. The only requirement on Spamhaus would be to include additional context regarding Database's inclusion on its website. A reference to this case would similarly allow any interested parties to see the allegations and Spamhaus' refusal to answer them. The proposed injunction does not threaten any rights of Spamhaus and, indeed, does not bar Spamhaus from any kind of future speech.

Database, on the other hand, faces continued harm to its reputation and goodwill. Without an injunction, Database will continue to suffer that harm and continue to be damaged by Spamhaus' actions. The balance of hardships clearly weighs in favor of issuing an injunction.

### D.     The Public Interest would benefit from a Permanent Injunction.

"The touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *Streck supra.* at * 3 *citing i4i supra.*, 598 F.3d at 863. "The public has a right to protection from scams and unfair trade practices." *Activision TV, Inc. v. Pinnacle Bancorp, Inc.*, 976 F. Supp. 2d 1157, 1168 (D. Neb. 2013), case dismissed (Nov. 22, 2013). Significantly, the public interest can be served by a properly narrow injunction, because such an injunction "substantially mitigates the negative effects on the public, practically and economically." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011).

This Court has previously noted that "[c]ourts have held that where the moving party has demonstrated that misrepresentations are being made in the marketplace, the public interest favors

9

injunctive relief. *W. Plains, L.L.C. v. Retzlaff Grain Co. Inc.*, 927 F. Supp. 2d 776, 788 (D. Neb. 2013) *citing Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F.Supp. 1117, 1134 (D.Minn.1996), *aff'd sub nom. Minnesota Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305 (8th Cir.1997) (noting the value of free competition). The proposed injunction in this case clearly would benefit the public, as it would add context to Database's inclusion on the blocklist and provide more information to the public.

## CONCLUSION

Due to the difficulty in calculating lost profit damages expressly caused by Spamhaus including Database on the Blocklist, Database urges this Court to enter an extremely limited injunction. Such an order would not infringe on Spamhaus's rights, is permissible under Nebraska and federal law, and would vindicate Database's rights in this matter.

DATED this 6th day of July, 2020.

        DATABASEUSA.COM LLC,
        Plaintiff

BY:   */s/ Robert S. Sherrets*
       Robert S. Sherrets, NE #24791
       James L. Schneider, NE #25825
       Sherrets Bruno & Vogt LLC
       260 Regency Parkway Drive, Suite 200
       Omaha, NE 68114
       Telephone: (402) 390-1112
       Facsimile: (402) 390-1163
       law@sherrets.com
       ATTORNEYS FOR THE PLAINTIFF